So we'll now hear argument in Alberti v. Rectors and Visitors of the University of Virginia. Ms. Reino. Good morning, Your Honors. May it please the Court. We're here today because the district court in this case forgot to apply the standard for a motion to dismiss and also imposed a standard for direct evidence on my client Andreas Alberti in evaluating a motion to dismiss where we were proceeding under a theory of circumstantial evidence pursuant to the McDonnell-Douglas framework. For example, in determining that the nexus between the discriminatory comments and the termination was too attenuated, the district court cited two cases, both of which the plaintiffs were pursuing a direct evidence theory. And in fact, in Finkel v. Howard County, this court specifically said that the isolated remarks were unrelated to the challenged employment decision and were therefore insufficient to provide direct evidence of discrimination. The comments that were made in this case... Can I ask you a question? Sure. We're at the 12B6 stage, so what does any of this nexus McDonnell-Douglas have to do? Isn't it simply a question of assessing plausibility of the claim? Exactly. That's exactly my point. So why are you telling us about it? Well, what I'm saying is the district court not only imported the summary judgment standard, the district court also applied a direct evidence standard and said that the comments that Mr. Carta made that were clearly showing some prejudice towards people from Switzerland were not related to the decision to terminate my client. But just to be clear, your point is that what we're talking about here is whether the claims here are plausible, have been alleged and are plausible, right? Yes. And in looking at that evidence, because the standard has become more strict in recent years for a motion to dismiss, I acknowledge, with decisions by the Supreme Court. So even though technically we don't have to prove all the elements, sometimes judges are looking at the elements. And one of the elements is whether there's an inference of discrimination, or whether there's enough evidence that it's plausible that you can develop evidence of discriminatory motive. What's your best evidence that you've pled for that? I think the best evidence is the research. Pfizer was very pleased with his research work, and Mr. Carta praised his research work. But also in combination with the little window we get into the decision maker's mind when he makes all those comments about people from Switzerland, which some of them I don't even understand. Well, they are very strange, but do they really go to national origin? They do. They do. What is the fact that the Swiss don't make good vegetables or bad salads? So the best evidence on the comments I would say is that Carta says you didn't have a good education because schools in Switzerland don't give you a proper education. And the reason I think that's the most important is because that is related to the work that they're doing. He's a graduate research assistant, and the guy is thinking... So why is that a national origin commentary instead of an educational merit commentary? Because he's saying that the schools in Switzerland are bad, and he says that the Swiss people don't speak proper German, and he tells them you don't speak proper English. My client does speak proper English, and that is in the complaint. He merely has a Swiss accent. That is not improper English. So if you look at all of the comments that Mr. Carta makes, you can see he has unfounded assumptions about people from Switzerland. Perhaps this is relevant or not, but in my mind, I speak some minimal degree of French, and I've been in different schools with Swiss Germans, and I find their French incomprehensible. So is that a national origin comment on my part? I think if you add up all the other things, and you are nasty to your Swiss national friends, and make generalizations about them not having good schools. You asked me what the best evidence was, and I think the thing about the schools is really the best evidence. He's saying Swiss schools are not as good as other schools, and he's also saying that... What's your second best piece of evidence? The pretext. The fact that he was doing phenomenally good research, that Pfizer was pleased. Carta was telling Pfizer that he's doing valuable research. He gets additional funding. It was supposed to be a two-year project. He gets another $100,000 from Pfizer to continue the research that my client, Mr. Alberti, is doing. Everything's going really well, and then he gives him a failing grade. He passes his dissertation examination, and that same semester, he gives him an unsatisfactory grade. Even that allegation alone, even if you didn't have the national origin comments, this court has held in summary judgment cases that that's enough to raise an inference of discriminatory motive. This isn't even the standard here. We don't even have to raise an inference at this stage. We just want to take discovery. We didn't even get the chance to take a deposition of Mr. Carta and find out if maybe he's going to invent another reason why he gave him an unsatisfactory grade. Counsel, from a factual standpoint, I was wondering, there's allegations of the grades in the spring of 19 and spring of 20 that you talk about. Were grades issued in the fall of those years? Yes, and he did get a satisfactory grade in the fall of those years. He got an unsatisfactory grade on the heels of really good research performance. Is that an adverse employment action or an academic decision? It is both. In the complaint, there is an allegation which distinguishes this case from other cases where it was determined it was purely academic. There's an allegation that when Mr. Carta gives him the unsatisfactory grade, his purpose is he wants to terminate him. The allegation is that he waits until the Pfizer project is nearly finished in order to take the step to terminate him. He knows, Carta knows, that if he gets an unsatisfactory grade, that is the same as an employment termination. Our allegation is that his intent was to terminate. Allegations are enough at this stage to create a plausible case that a jury could find that there is a discriminatory motive. You have to allege enough to say that he got the bad grade because, I forget the professor's name, he really doesn't like Swiss people. He really thinks that Swiss people have bad schools. He likes their chocolate, but he doesn't think much of their salads and vegetables. He has lots of ideas about people from Switzerland. It doesn't matter what Mr. Alberti, who is Mr. Alberti, based on his ideas about people from Switzerland, but that is all, at this point, it is just plausible. We don't have to prove it. We don't even have to present circumstantial evidence of this yet. At the motion to dismiss stage, all we need to do is make allegations in order to get to discovery and show that this is a plausible case. There's no need even to show discriminatory statements, but we did that. We went above and beyond what's required. Our main argument, I think, going forward, if we get discovery and if we're going to trial, is going to be that he was performing his job very well. He was doing the research. He was getting praise from Pfizer. He was getting praise from CARTA. Why would you get an unsatisfactory grade? That's a question only a jury can answer, the why. Back to this issue of the grades and the claims that you've made in this case, you've got a Title VII claim and a Title VI claim. It seems to me that your argument would seem to swallow whole the distinction between Title VII and Title VI here. Why isn't that the case? It doesn't swallow the distinction because the allegation is that Mr. CARTA's purpose in giving him the unsatisfactory grade was to terminate him. That's paragraph 62 of the complaint where it's alleged that once the Pfizer work, the research work, was done, he took the step to terminate him by giving him the unsatisfactory grade in the spring semester of 2020. How long was it from the bad grade to the termination of his graduate employment status? I don't have the exact amount of time, but it's the next month. He gets the grade in June and then July 29th. It's not instantaneous because he appealed the grade. July 29th, he gets dismissed from both. There's an exhibit attached to the complaint, which is a letter to him stating that the decision was upheld. You got the unsatisfactory grade. Now you're dismissed from both. It is both an employment that he loses and an educational program that he loses. It's not swallowing the difference because in other cases, this circuit has held that if it's a purely academic decision, you can only proceed under Title VI. Here, it's a hybrid decision. Mr. CARTA, we're alleging, has a motive to both end his employment and to end his educational program. We have an awful lot of cases, particularly in the higher ed area, when it comes to grades and that sort of thing, where we give a significant amount of deference to the university. Is that not the case here? I don't think you need to give a significant amount of deference to the university because it is a hybrid decision. I think even in employment cases, there is deference, but on a motion to dismiss, we're only looking at whether the allegations ... The reason I ask that is if this was a graduate student who didn't have an employment position in exactly the same setting, there wouldn't be very many cases, I would think, in the higher ed area that would support your argument. Well, I do think it is both a Title VII and a Title VI case. As I mentioned before, the Title VII ... What strikes me is that you seem to be arguing that we would treat two people in basically the same situation academically differently because one of them also happens to have a graduate assistant job. He doesn't just happen to have it. That is his job. I understand that, but the thing that troubles me about your argument is that you seem to argue that in some cases, we would owe significant deference to the decision of the university on academics, but for the graduate student who did not have a job, they would be treated one way, but your client would be treated differently. My client would only be treated differently with regard to his Title VII claim. With regard to his Title VI claim, you would have to apply the decisions of this circuit and the Supreme Court in Title VI cases. For a Title VII case, on a motion to dismiss, we're only looking at the plausibility. If we upheld the university's decision academically, what case does your client have left? He's got to get ... It seems like to me you've got to plead and then be able to show that the academic determination was wrong and there's no deference to the university in order to get to the employment part. You can't separate the two. The motive that Mr. Carter had in giving him the unsatisfactory grades was to terminate. That has to be looked at through the Title VII standards because it's an employment discrimination claim. For Title VI, the question of just whether ending the program is discriminatory, you look at the Title VI case law, but the fact that the vehicle to fire him was through grades doesn't mean that he is subject to the Title VI standard for his Title VII claim. You need to apply the Title VII case law in examining whether Mr. Carter had a national origin motive to give him the grades for the purpose of terminating. At this stage, you shouldn't even be doing that because we're not required to reason inference. We're only required to give plausible allegations of discrimination. We're certainly not required to show direct evidence of discrimination, which is what the court seemed to be asking for here in citing two decisions that proceeded along a direct evidence route. Anything else you want to tell us before rebuttal? I think no. Thank you very much. Ms. Hensley? Good morning. I'm here on behalf of the Rector and visitors of the University of Virginia. My name is Amy Hensley. May it please the District Court properly held that Mr. Alberti failed to plausibly allege a claim under Title VII and Title VI for discrimination and retaliation. Accordingly, we ask this court to affirm the court's decision. In dismissing the case at the 12B6 motion to dismiss . . . Why don't you pull that microphone a little bit closer to you? Thank you. The District Court properly found that the allegations in the complaint were insufficient to plausibly state a claim for relief on its face for three reasons. First, Alberti failed to sufficiently allege an adverse employment action. Two, he failed to plausibly allege that he was discriminated against because of his national origin. And third, he failed to plausibly allege causation to state a claim for retaliation. In taking the adverse employment action argument first, Mr. Alberti's Title VII claims failed because he did not allege an adverse employment action. An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment of significant different responsibilities, or a decision causing a significant change in benefits. Here, Mr. Alberti's allegations do not relate to his status as a research assistant. Rather, they relate to his status as a student. He complains about unsatisfactory grades that led to his dismissal. He was dismissed by the Dean's Office of the University of Virginia School of Engineering and Applied Science for two unsatisfactory grades. He lodges a grade appeal, which is then considered by the Graduate Studies Committee, and they uphold the grading decision. And my friend on the other side has brought the Court's attention to the exhibit that was attached, and that's JA-21. And there, it does not indicate on the face, and the Court can see it, that he was fired from any kind of research assistant. It says that the grading decision was made fairly in a manner consistent with the best professional judgment and expectations of the discipline. Therefore, they upheld it. So, as you can see... So, when was he fired after that? Arguably, Judge, there is no firing. It is because he could no longer be a student at UVA, he could no longer participate as a research assistant, Your Honor. Those things were related in that if you are not a student, you can no longer be a research assistant. So, it is a tangential effect of not being a student at UVA any further. Well, but your friend on the other side says that's precisely the point. You've got an academic advisor who also happens to be her client's boss, and the two seem to be inextricably intertwined in a way that suggests that maybe this was all a pretext to ultimately get him gone. No, Your Honor. Respectfully, I would disagree, and I think that the case law on that tells us that when we have these dual roles, which is specific to this scenario, where we have a research assistant who is also a graduate and student, this is a very special relationship, and when we have the dual roles in that context, Your Honor, the court says we have to look at the role, and we have to look at the alleged adverse action to see if it pertains to the student's role as a student or in the employment context. And here, when you look at the allegations, they pertain to the student's role only. It's unsatisfactory grades. So if that's true, if you kind of switch the facts and the comments, because I know you have an argument that these comments don't sufficiently allege discrimination on the base of national origin, but let's assume it's about race, and it's just horrific, racially discriminatory marks, and similar facts. It just seems, it seems somewhat, you know, I mean, it seems a little tunnel vision to say that if you were able to establish or even plausibly plead discrimination in the grades, knowing that the effect of that would adversely affect employment, we're just not supposed to look at that link at all. Well, I think that the court pointed out earlier that if we, we have to separate those two, otherwise the Title VI essentially swallows whole the Title VII, and Title VII is about employment, discrimination in employment, and there has to be specific allegations that relate to that relationship as an employee, and if that is lacking, Your Honor, then there is no claim under Title VII. There is no adverse employment action. There is import in the word employment action. This is not an adverse action. If we were talking about that, we would be talking about Title VI. So, I think, while I understand Your Honor's argument, I think that there is... I'm not arguing. I'm just trying to make sure I understand, yeah, how the theories go. Yes, sir. Bad choice of words on my part. That's okay. No worries. But my point is, is that when we look at the relationship here, we look at the specific allegations, we're looking at the complaint, these allegations do not in any way go to Mr. Alberti's status as an employee, and for that reason, when you look at the case law, the Rensselaer case that we pointed out, the Stewart, when you have the court look at these cases where you get bad grades, C's, you fail, in that context, Judge, it just doesn't meet the standard to say it's an adverse employment action. So, what I've said is right. If it's a grade-based decision, we cabinet that way, and if it's not related to the actual activities, a termination, or a grade thing, the fact that it affects that is not something that we can consider for Title VII purposes. I would agree with that. Yes, sir. I think if we had a scenario where Mr. Alberti was told, you're showing up to the lab late, we don't have funding for your position anymore, so we're going to take it away, you can still be a student at UVA, but you're not going to be a research assistant, or we're going to demote you, now you're going to be a teaching assistant, not a research assistant, that would be facts where the plaintiff might be able to say, that's specifically talking about an employment decision, and while I'm not going to say that that would be enough, that would certainly be those facts that would suggest it might be. So, on that point, Your Honor, I think that this court should affirm the dismissal of the Title VII claim for that basis alone, that there is no alleged adverse employment action. But we don't have to, do you agree with this? I mean, that issue about whether the linkage of the grades to employment, whether that's enough for Title VII purposes, is beside the point if the allegations of national origin are insufficient. Do you agree with that? Yes, sir. I think that, and here are the allegations of national origin discrimination fail, they're insufficient, and therefore Title VII and that reason alone. Yes, sir. And moving now to that argument, Your Honor. Let me ask you about the adequacy of the pleading. In count one, paragraph 71, the pleading is made defendant subjected plaintiff to adverse employment actions because of plaintiff's national origin and violation of Title VII. That appears to be all there is in article under count one related to an adverse employment action. Is that what you're saying is insufficiently pled? I'm saying, Judge, that when you look at the allegations as a whole, the allegations, there is no allegation whatsoever in this complaint that alleges a specific adverse action as it relates to employment. Nowhere. Because what you have are adverse grades. How about paragraph 67? Plaintiff received a letter from the Graduate Studies Committee upheld the dismissal from the chemical engineering program and termination from his position as a graduate research assistant. Your Honor, is what I pointed out to the court. It's JA-21, and I think if the court looks at that letter, it does not say you are terminated from your graduate research assistant position. What it says is that the grade appeal is upheld and you are dismissed from the chemical doctoral program. I don't see in that when I read it, Your Honor, there's any mention of anything that would link that decision to an adverse employment decision. That last clause, termination from his position as a graduate research assistant, is simply inadequate from a plausibility standpoint? Yes, sir. It's conclusory at best. We are at the 12B-6, and I agree that all reasonable inferences have to be given to the plaintiff, but we have to have well-pleaded allegations to be taken as true. This exhibit was attached. There was no objection to that. It's properly before the court. If that's the evidence, if that's the proof they're relying on to show that there was a firing here, it just doesn't say what, respectfully, they've indicated. Judge, I'm now moving into the second piece, which, as I indicated, this complaint does not plausibly allege discrimination on the basis of national origin, and for that reason alone, both of the Title VII and Title VI claims were properly dismissed. Now, Alberti argues in his brief, and argues here today, that the court fails to consider his circumstantial evidence. That is inaccurate. The court absolutely considered all of the evidence, all of the allegations. The court noted in a footnote, I believe it's JA-91-2, that this is not a case where the plaintiff was required to plead a prima facie case under McDonnell Douglas. It noted that the plaintiff said he was bringing a case under McDonnell Douglas, that he was proceeding under a circumstantial evidence theory, but what he said was, you have to show a claim under the statute. What does Title VII say? It prohibits employers from discharging or discriminating against an employee with respect to their compensation, terms, conditions, or privileges of employment because of national origin. It is on that prong that the district court properly found that the evidence was lacking. Now, the statements that were brought up earlier, that Dr. Carta allegedly said, that is the only evidence, that is the only allegation whatsoever in this complaint that is linked to Mr. Alberti's national origin. Without those statements, there is no other fact that Mr. Alberti's national origin was of consideration here at all. As the district court properly found, those statements were isolated, they spanned several years, weren't made contemporaneously with any of his unsatisfactory grades or his dismissal. But, Counsel, this isn't to say which way all this falls, but the plaintiff is entitled to point out the comments about the education and the speaking of German. I guess the other one is about the food stuff and about hunters and nationalism. Those seem to be the four comments that relate to national origin. But isn't part of the allegations not just that, but the fact that Professor Carta promoted the research that the plaintiff had done, and that Pfizer continued to fund it? Aren't we required to look not just at the maybe two, that may indicate that the plaintiff was actually doing a good job? Yes, sir. The court was required to look at all the evidence, and they did. And it was simply insufficient in looking at all of it to plausibly allege discrimination on the basis of national origin. Is it because, why is that? Is it because these statements just aren't really what you would call discriminatory-type statements? I mean, they're about national origin. That's a piece of it, Your Honor. I would say, here today, my friend on the other side indicates that their most powerful evidence is about not being educated properly, and Swiss schools don't educate properly. But again, when you look at that allegation within the complaint, it's an allegation that Dr. Carta said that Mr. Alberti was not educated properly at his Swiss school. It's not an allegation, even within the complaint, that all Swiss schools are therefore deficient, and that he doesn't think any education in Switzerland would be proper. Regardless, yes, to answer your question, their evidence is, the circumstantial evidence relies on these stray comments, which have no bearing on any adverse employment action. And when you have that, their probative value, their worth, even when you're talking about direct evidence, the reason why stray comments are of little value in talking about the direct evidence test applies here as well. If they are remote, if they're not talking about the employment decision, that doesn't go out the window just now because we're talking about circumstantial evidence. The court considers those same things, and that's what the court did here. And I think that's probably why you have some sites talking about that direct evidence, because it's applicable in this circumstance. And the point is, is that those stray statements, in addition to these other allegations, are insufficient. When you look at those specific allegations, I think if you walk through them, it is evident that those allegations do not plausibly allege discrimination on the basis of national origin. What you have is, on some unknown date, Carta told Pfizer that Alberti was performing reasonable or valuable research. We don't know when, so that doesn't help us. 2018, Pfizer extends the research project with funding for two more years. He doesn't make his unsatisfactory grades until spring 2019 and spring 2020. He's dismissed June 2020. So the fact that the research gets continued before that doesn't show that there's any kind of pretext, circumstantial evidence. How do we know it's before the spring of 2018, that the research is extended? That's in the complaint, JA11. It says, in 2018, Pfizer extended the research project for two years. But how do we know that was before the spring grades in the spring of ... Okay, spring of 2019. Right, so that happens before. And then third, he says he successfully defended his doctoral proposal exam that was initially scheduled for June 2018 and January 2019. Well, that's before he's gone through the semester. I mean, that doesn't plausibly allege that he successfully complied and met all the qualifications of his program at the end of the spring semester in 2019. And then fifth, they say, in January 2020, Carta submits the abstract. It says he commits to present this stuff at a conference. Again, this is before the semester has taken place. It is speculation, frankly, that he successfully complied with the qualifications of his program based on these allegations, and therefore they do not plausibly allege that he earned satisfactory grades in the spring semesters of 2019 and 2020 and was dismissed because of national origin. Any conclusion based on that, Your Honor, respectfully, is pure speculation. And finally, Judge, I would just move quickly to my retaliation argument. Here, the court properly dismissed because they found that there was no causal nexus. And there, the court focused on the presence of close temporal relationship and said that that was just not there at this pleading stage. Now, my friend on the other side has argued in the brief that they're relying on the case of Letary because it is true that causation does not have to be established only by temporal proximity. But other facts that alone or in addition to temporal proximity suggest an adverse employment action occurred because of the protected activity can be enough. But the facts of Letary are just not instructive here. That case was about a female who complained multiple times and said she was being discriminated against on the basis of her sex. Her management people found out about that, and they scrapped their plans to immediately fire her. But you have conversations within a month or two after the complaint is made that we're going to fire. And they changed her responsibilities one month after the complaint is lodged. And then four months after they've talked about firing her, they've essentially created a scenario where her position is redundant. And she is then fired. And so the court in that circumstance said, I think you have enough facts here to string this negative attitude together and it alleges discrimination within the workplace. So can I ask about that? So that may be a clear example of sort of bridging the gap. But why isn't the evidence that your friend on the other side points to also sufficient? I mean, she points to, you know, a claim that Professor Carter delayed Alberti's doctoral research program and set unrealistic deadlines. You know the evidence. Tell me why that isn't enough. Because when you look at the evidence specifically, Judge... Not evidence. We keep talking about evidence. I'm sorry, yes. The allegations, excuse me. Alberti makes the complaint to the OEO at UVA in July 2018. So then the allegations flow is that Dr. Carter allegedly knows about that because Mr. Alberti finds a letter in his lab pertaining to some unnamed student where he says, I want to have a good working relationship. That alone, the district court did not decide it on that fact. But I think, Your Honor, that alone is insufficient to plausibly allege that Dr. Carter even knew about the report to the OEO. And for that reason he could not retaliate. Because if the decision maker doesn't have knowledge, that is the main reason why the retaliation claim must fail. But in going back to your question, here they say that he makes the report. Then he says that allegedly the retaliation intensified. He also says that there was a delay because his examination was originally scheduled for June, but it was postponed. Well, June 2018 is before he ever makes the complaint to the OEO. So a postponement of an examination before Alberti contacts the OEO fails to show any nexus between protected behavior and an adverse action. That's insufficient as a matter of law because it's before the action allegedly occurs. Then he says he allegedly had unrealistic deadlines in fall 2019 and 20, which he successfully met. And finally, he just says, I have these unsatisfactory grades. When you look at these allegations, comparing it with a case like Letary, it is easy to see that those gaps have not been bridged. And it's for that reason, Your Honor, that the retaliation claims should also be dismissed. Anything else you want to tell us very, very quickly? No, sir. Thank you for your time. Thank you. And Ms. Zorino will hear you in rebuttal. Thank you, Your Honors. My friend on the other side seems to have taken up the district court's mistake of applying summary judgment cases and rules and a theory of direct evidence to the complaint at issue in this case. And that's important because the standard here is important. We're not looking at evidence. We are looking at allegations asking the court for the opportunity to develop evidence through discovery. This is all allegations that only the plaintiff has. We have not yet had the opportunity to take the deposition of Dr. Carta. That deposition could very well lead to much stronger pretext evidence than is The standard here is just whether there's enough allegations to even waste the court's resources allowing us to complete discovery. And we think that there are. And it's very important for you to look at cases based on motions to dismiss as opposed to motions for summary judgment. For example, this court's decision that came out last year in Hood-Wilson versus the Community College of Baltimore County, the alleged discriminatory statements in that case also had no bearing on the adverse action there. The plaintiff was denied a promotion. There are no allegations that discriminatory comments were made with regard to the decision whether she should be promoted or not. The decision maker just happened to make racially discriminatory comments at other times. I also ask that the court consider that even though this is a national origin case and not a race case, the comments that were made by Dr. Carta are really just as insidious. He is making assumptions about people from and veggies. These prejudgments and his prejudices seem silly, but if they lead to him making an adverse decision against my client, they're not just silly. And that is what we want the opportunity to develop evidence of. Also, I think it is important that Mr. Alberti is who also has a job can proceed with a Title VII claim. We are depriving all students who are also employees of their Title VII protections for their jobs. Are those different than the remedies that would be available under Title VI? The Title VII remedies? I'm actually not sure about that, but I do know that the standard is different for looking at the evidence. As we discussed before, there's a very deferential standard towards the assignment of grades that an academic institution gives. So I wouldn't want to just concede that students who are also employees can only bring cases under Title VI because they are entitled to the protection from discrimination in their job as well as in their educational program. And here, there are allegations in the complaint that Dr. Carter's purpose in assigning him the unsatisfactory grades is to completely get rid of him, to terminate him. There's no question in this case that Mr. Alberti was terminated from his student research assistant position. The idea that because the letter doesn't explicitly say you're terminated from your position means that he wasn't is brought up for the first time here today. There is no question. He's not there anymore. He was terminated. If the pleading is inadequate on that front, we should have been given the opportunity to amend. Did you ask for it? No, but the complaint does say that he was terminated. And while my friend on the other side says that that's conclusory... Agreed. You do say it's terminated, but it's pretty sparse after that. Well, it also says in paragraph 62 that Carter took steps at the next opportunity to have plaintiff fired. And then it goes through the whole thing about the grades. And so we are alleging that Dr. Carter's motive in giving him an unsatisfactory grade is to terminate him from both things. He wants him gone. He doesn't want to work with him anymore. He got what he needed out of him with the Pfizer research, and now he's done with him, and he wants him fired, and he wants him not to be in the program anymore. That is our allegation. It's not evidence. It's an allegation. So we need the opportunity to develop evidence of our allegations, but also to develop additional evidence. The standard on a motion to dismiss is very light for a reason, because we haven't had the opportunity to inquire into the mind of the person who made the decision. Title VII cases are very information dependent, and when a plaintiff brings a claim, the best evidence that they can get of discrimination is through the deposition of the decision maker. We didn't get that opportunity. That's all we're asking for is the opportunity to get discovery and to be able to develop evidence of a discriminatory motive. That's why when you look... Anything else you want to add? Very quickly. I just want to point out that this circuit has now ruled that pretext alone can get you fired. That's evidence, that's allegations, on top of our allegations that he was performing his research satisfactorily. Since this is no longer a pretext plus jurisdiction, I ask that you allow the plaintiff to develop evidence of pretext and reverse and remand. Thank you. We thank counsel for their arguments in this case. As you may know, our tradition is to come down and greet counsel personally, but our COVID observation doesn't permit that right now, so we hope you'll be back in the future when we can do that. The court will now take a short recess and return for the rest of our docket. Thank you.
judges: G. Steven Agee, Albert Diaz, A. Marvin Quattlebaum Jr.